IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PATRICIA A. ROBBEN-CYL,            )
                                    )
            Plaintiff,              )
                                    )    No. 11 C 7501
v.                                  )
                                    )    Magistrate Judge Sidney I. Schenkier
                                    )
MICHAEL J. ASTRUE, Commissioner     )
of Social Security,                 )
                                    )
            Defendant.              )

## MEMORANDUM OPINION AND ORDER[1]

Patricia A. Robben-Cyl, pursuant to the Social Security Act, 42 U.S.C. § 405(g), seeks an

order reversing or remanding the final decision of the Commissioner of the Social Security

Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB")

(doc. # 16). The Commissioner has filed a response, seeking to affirm the denial of benefits (doc.

# 18). For the reasons stated below, we grant Ms. Robben-Cyl's motion and remand for further

proceedings.

### I.

Ms. Robben-Cyl applied for social security disability benefits on May 22, 2009, alleging a

disability onset date of January 1, 2008 (R. 156). Based on her employment history, Ms. Robben-

Cyl's date of last insured status was December 31, 2010 (R. 10). Her application was denied

initially and upon reconsideration (R. 71-73, 79-81). She requested a hearing before an

Administrative Law Judge ("ALJ"), which was granted and held on August 12, 2010 (R. 39-66). On

---

[1] On January 17, 2012, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this
case was assigned to this Court for all proceedings, including entry of final judgment (docs. ## 13, 14).

November 18, 2010, the ALJ issued a decision finding that Ms. Robben-Cyl was not disabled under Sections 216(i) and 223(d) of the Social Security Act (the "Act") (R. 10-16). *See* 42 U.S.C. §§ 416(i) & 423(d). The Appeals Council denied Ms. Robben-Cyl's request for review (R. 1-6), making the ALJ's decision the final decision of the Commissioner. 20 C.F.R. § 404.981. *See Shauger v. Astrue*, 675 F.3d 690, 695 (7th Cir. 2012).

## II.

We begin with a summary of the medical record and then proceed to consider the hearing testimony given by Ms. Robben-Cyl and the vocational expert, as well as the ALJ's written decision.

### A.

Ms. Robben-Cyl, who was 54 at the time she filed for disability, is married and has no children (R. 156-57). She has a high school education and has worked as an administrative assistant and a floral designer (R. 185, 194). She claims that her ability to work is significantly limited by severe back pain and numbness in her right hand (R. 184). In addition, she contends that her medications make her sleepy and that she suffers from depression (*Id.*).

Ms. Robben-Cyl has not engaged in substantial gainful activity since the alleged onset date of January 1, 2008, although she did work part-time as a floral designer until September 2008 (R. 12, 54, 185).

Ms. Robben-Cyl underwent a lumbar laminectomy at the L5 level in 1993 (R. 379).[2] In January 2008, she presented to her primary care physician, Dr. Thomas Nelson, with back pain and

---

[2] "Laminectomy is a type of back surgery performed to relieve nerve compression (radiculopathy) or nerve root injury in the spine caused by disc herniation or spinal canal narrowing (spinal stenosis) related to degenerative changes." MDGuidelines, "Post-Laminectomy Syndrome," http://www.mdguidelines.com/post-laminectomy-syndrome (last visited February 5, 2013).

"shooting pain" down the right leg (R. 329-30). X-rays of Ms. Robben-Cyl's left hip and pelvis showed no abnormalities or fractures (R. 354). Dr. Nelson diagnosed right lumbar radiculopathy and iliopsoas (inner hip muscle) spasm and referred her to Athletico for physical therapy (R. 386). The physical therapist, Kamila Rylander, laid out goals of reducing Ms. Robben-Cyl's pain to 0 to 1 out of 10 and to increase her flexibility and strength (R. 386-87). By February 18, 2008, Ms. Rylander reported that after 15 sessions, Ms. Robben-Cyl's "core strength and bilateral lower extremity flexibility is much improved, patient has not had any back exacerbation as of late, . . ., and was able to return to walking on daily basis for 30 minutes on treadmill. Patient will resume part-time work (6 hours at a time, 3 times a week) and will see if her symptoms are exacerbated" (R. 382-83). Ms. Rylander recommended continuing physical therapy two to three times a week for another month and then reassessing at that time (*Id.*). On March 12, 2008, Ms. Rylander advised Dr. Nelson that Ms. Robben-Cyl had "reached all her goals, and is continuing independently at this time" (R. 381).

In June 2008, Ms. Robben-Cyl complained of hip and leg pain, and in October 2008, when she presented again with back pain, Dr. Nelson sent her for an MRI (R. 327, 323). The MRI showed "slight disc bulging with anterior spurs at L1-L2 an L2-L3" (R. 293). The radiologist who performed the MRI, Dr. Robert Breit, reported that the imaging showed "[m]ild multilevel degenerative bulging and facet arthropathy" and "[n]o focal disc herniation" (*Id.*).

Dr. Nelson then referred Ms. Robben-Cyl to Dr. Randolph Chang at APAC Groupe Centers for Pain Management ("APAC"). In Dr. Chang's initial exam on October 13, 2008, he noted that her gait was normal, her range of motion for her lumbar spine was 100% for flexion and 75% for extension, and side bends and rotation were 100 % (R. 379). He recommended an epidural injection and prescribed Lyrica, Skelaxin, a Flector patch, and Vicodin for severe breakthrough pain (R. 380).

3

On November 3, 2008, Dr. Chang administered an epidural steroid injection (R. 377). In his treatment notes for that date, he listed her diagnosis as "1. Low back pain with radiculopathy in the right lower extremity. 2. Postlaminectomy pain syndrome. 3. Multilevel degenerative disease and facet arthropathy" (*Id.*). On December 1, 2008, Dr. Chang administered a second epidural steroid injection (R. 375).

Also in December 2008, Dr. Nelson sent Ms. Robben-Cyl for a CT scan of her sinuses due to a history of sinusitis. The radiologist reported "[f]indings compatible with pansinusitis" and "[n]asal septal deviation" (R. 274). Consequently, Dr. Nelson referred Ms. Robben-Cyl to Dr. Kiran Girdhar, an allergist, who examined Ms. Robben-Cyl and tested her for allergies. In March 2009, he reported to Dr. Nelson that Ms. Robben-Cyl had "significant allergic rhinitis," "airway hyperreactivity and chronic rhinosinusitis" and that she "is highly allergic to ragweed" (R. 371). He recommended a "a short course of Prednisone," Nasonex, Advair, Singulair, Zyrtec-D, and immunotherapy (*Id.*).

In a follow-up appointment at APAC on January 2, 2009 for her back pain, Dr. Krishna Parameswar observed that Ms. Robben-Cyl had "resolving right lumbar radiculopathy, post-laminectomy pain syndrome, and multilevel lumbar disc degenerations" and that the "patient presents today with 100% relief of her symptoms and a pain level of 0 out of 10" (R. 374). Dr. Parameswar referred Ms. Robben-Cyl for physical therapy (*Id.*), and on January 19, 2009, Ms. Robben-Cyl returned to Athletico (R. 372). At that appointment, Ms. Rylander reported that Ms. Robben-Cyl said that "her pain is excruciating rated up to 10/10" and set several goals, including decreasing Ms. Robben-Cyl's pain so she could walk on the treadmill for 30 minutes and sit at her computer "to be able to do research for work opportunities" (R. 372-73).

4

On March 12, 2009, Ms. Rylander advised Dr. Nelson of Ms. Robben-Cyl's progress at Athletico (R. 367-69). She stated that Ms. Robben-Cyl reported "significant improvement in low back exacerbations, after issuing a home TENS unit. Patient reports her pain has been minimal if she uses TENS unit" (R. 367).[3] She also reported that Ms. Robben-Cyl could now walk on the treadmill for 30 minutes with a pain level of 2-3 out of 10 and could sit at her computer for 30 minutes with tolerable pain (R. 368).

On March 26, 2009, Dr. Nelson sent Ms. Robben-Cyl for further MRIs to investigate the sources of her back pain and neck pain that radiated to her arm (R. 294-95). Regarding the thoracic spine images, Dr. Breit wrote, "There is slight posterior bulging of the T9-T10 disc. A tiny focal extension of disc signal material into the right ventral epidural space is present at T10-T11 with minimal abutment of the thecal sac," and listed his impression as, "[s]mall right sided disc herniation at T10-11" (R. 294). In the report for the cervical spine images, Dr. Breit observed:

> slight posterior bulging of the C2-C3, C3-C4 and C6-C7 discs. Posterior disc bulging with tiny marginal spurs is present at C4-C5. At C5-C6 there is disc space narrowing with posterior disc bulging and tiny marginal and uncinate spurs. There is mild encroachment of the foramina.

(R. 351). His impression was "[m]ild cervical spondylosis with mild C5-C6 foraminal stenosis" and "[n]o disc herniation" (*Id.*).

To address Ms. Robben-Cyl's continuing back pain, Dr. Nelson referred her to Dr. Gary Koehn for pain management consultation (R. 365). Dr. Koehn's April 3, 2009 treatment note recounted Ms. Robben-Cyl's history of back pain symptoms, which have "waxed and waned" (R. 362). He stated that she relied on physical medicine strategies, such as physical therapy and TENS,

---

[3] "TENS" stands for transcutaneous electrical nerve stimulation. Dorland's Illustrated Medical Dictionary 1882 (32nd ed. 2012).

among others, for symptom control (*Id.*). He listed various medications she had tried, "including recently Soma, Vicodin, Cymbalta, Lyrica, Amrix, tramadol," but noted that "[s]he relies very little on medicines for symptom control" (*Id.*). Dr. Koehn had reviewed her March 2009 MRI films, and in his treatment plan, he stated, "She certainly has problems that would be pain producing. On the other hand, she also has problems which should be entirely controllable" (R. 364). On April 24, 2009, he reported that Ms. Robben-Cyl is "walking on the treadmill 30 minutes and sweating 20 of those minutes. That is working great. However, when she tried to restart her core exercises or some of her stretches her left sciatica symptoms flared" (R. 365). He also noted that she "is taking little analgesic medication" (*Id.*). On April 28, 2009, Dr. Koehn administered epidural steroid injections (R. 359). When Ms. Robben-Cyl returned to Dr. Koehn on May 22, 2009, she reported that her left leg pain was significantly better, and her left hip pain was entirely manageable (R. 306). She was then taking a combination of Vicodin and Soma, but only about four to five tablets each week (*Id.*). Dr. Nelson had also started her on Pristig, an antidepressant (*Id.*). She exercised, walking on the treadmill 30 minutes, but came in for treatment of right upper back pain (*Id.*). Dr. Koehn recommended that she continue with her treadmill exercises and eliminate the use of Soma and Vicodin, since they were used so rarely, but mentioned considering Neurontin or Topamax (R. 307). He also concluded that he could see "no activity that would be harmful to her" (R. 308).

On July 30, 2009, Dr. Richard Bilinsky, a medical consultant, reviewed Ms. Robben-Cyl's medical records and assessed her residual functional capacity ("RFC") (R. 427-34). He opined that she was able to perform the exertional requirements of light work: occasionally lift 20 pounds, frequently lift 10 pounds, stand and/or walk for a total of 6 hours in an 8-hour workday, sit for a total of 6 hours in an 8-hour workday, with no push/pull limitations, and only occasional climbing of

ladders/ropes/scaffolds, stooping, kneeling, crouching, and crawling (R. 428-29). Dr. Bilinsky reported that no medical source statement regarding the claimant's physical capacities was in the file (R. 433-34). On August 3, 2009, Kirk Boyenga, Ph.D., a state agency consultant, completed a Psychiatric Review Technique form based on his assessment of Ms. Robben-Cyl's mental status (R. 435-48). He concluded that her depression was not a severe impairment (R. 435). He rated her as having only mild restrictions of activities of daily living, no difficulties maintaining social functioning, no difficulties maintaining concentration, persistence, or pace, and no episodes of decompensation (R. 445). He concluded that the antidepressant medication was part of treatment for chronic pain and was "not significant for mental health care" (R. 447).

On August 15, 2009, Dr. Thomas Sullivan performed an EMG on Ms. Robben-Cyl's right arm and concluded that the electrical findings were consistent with a "mild carpal tunnel syndrome" and recommended using a wrist splint to see if the patient's symptoms changed (R. 465).

Meanwhile, Dr. Nelson had Ms. Robben-Cyl return to Athletico in July 2009 for further physical therapy (R. 473). At that point, her symptoms had increased, and the physician's diagnosis was listed as "[m]yofascial back pain, cervical spinal stenosis, T10-T11 HNP right" (*Id.*). Ms. Rylander reported that "[p]atient has pain with even minimal activity, such as walking, which she is unable to do for more than 10 minutes, prolonged sitting, prolonged standing, unable to drive more than 30 minutes" (R. 474). Ms. Rylander's August, September, and October 2009 reports reflect some improvement in Ms. Robben-Cyl's endurance, strength, and range of motion, but continue to show limitations in those areas (R. 466-72, 546). By October 2009, despite continuing complaints of pain, Ms. Robben-Cyl reported that she could walk a mile without resting (R. 546).

Late in 2009, Ms. Robben-Cyl participated in aquatic physical therapy, which she said increased her ability to move and decreased her pain (R. 538-43). In addition, she received treatment from Dr. Douglas Cotsamire, a rheumatologist, who opined that she did not have an autoimmune problem and prescribed Neurontin at night for her pain (R. 536).

On December 8, 2009, Ms. Robben-Cyl underwent a thirty-minute consultative medical examination for the Bureau of Disability Determination Services with Dr. Debbie Weiss (R. 527-32). Ms. Robben-Cyl complained of neck pain that radiated down her spine and caused pain at a 4 to 5 out of 10 level and back pain that worsened when she lifted or reached (R. 528). She told Dr. Weiss that she took Vicodin, which helped but knocked her out (*Id.*) Other medications included Xyzal, Vermis, Neurontin, Centramine, salicylate, and Xoma (*Id.*). Ms. Robben-Cyl also told Dr. Weiss that her carpal tunnel syndrome was worsening, causing the fingers in her right hand to fall asleep (*Id.*). Dr. Weiss performed a physical examination and a "mini mental health status examination" and analyzed Ms. Robben-Cyl's alleged bases for disability, which were "(1) multiple back problems: herniated disc; spinal stenosis; spondylosis; sciatica; (2) carpal tunnel syndrome; (3) depression" (R. 527, 533-34).

Dr. Weiss found that Ms. Robben-Cyl possessed full range of motion in her neck, but had decreased range of motion in her lumbosacral spine, with positive straight leg raising (R. 531). She noted that Ms. Robben-Cyl had no gait impairment, and no neurologic deficits in her upper and lower extremities (*Id.*). Dr. Weiss found "no impairment of grip strength . . . and gross manipulative movements of the hands," and there were no abnormalities in Ms. Robben-Cyl's mental health (R. 532).

On July 6, 2010, Dr. Nelson completed a "Medical Source Statement of Ability To Do Work-Related Activities (Physical)" (R. 588-90). In assessing Ms. Robben-Cyl's exertional limitations, he checked a box for "less than 10 pounds" for both occasional and frequent carrying and/or lifting (*Id.*). He rated her ability to stand and/or walk as less than 2 hours in an 8-hour workday and noted that she must periodically alternate sitting and standing to alleviate pain (R. 588-89). He checked boxes to indicate that her ability to push and pull was limited in both her upper and lower extremities (R. 589). He deemed her to never be able to climb, kneel, crouch, or crawl, and only occasionally be able to balance (*Id.*). In support of the exertional limitations, he listed diffuse osteoarthritis, cervical spinal stenosis, thoracic herniated disc, the aftermath of a lumbar laminectomy involving multilevel lumbar spondylosis and foraminal stenosis, and chronic myofascial pain syndrome (*Id.*). Ms. Robben-Cyl manipulative functions were limited to occasionally reaching, handling, fingering, and feeling (R. 590). He asserted that Ms. Robben-Cyl had the following environmental limitations: temperature extremes, dust (allergies), vibration, humidity/wetness, hazards (such as, machinery or heights), fumes, odors, chemicals, and gases (*Id.*).

**B.**

At the administrative hearing, held on August 12, 2010, Ms. Robben-Cyl, who was represented by counsel, and Edward Pagella, a vocational expert, testified (R. 39). Ms. Robben-Cyl described her back pain as "lower back pain and pinched nerves" and said of the pinched nerve pain: "[I]t's excruciating. It aches, it throbs, it moves around. It hurts to look up too much, it hurts to lift your arm up too much, you can't stoop or bend and sometimes you're just walking and it just freezes" (R. 45-46). She takes Vicodin and Soma to relieve the pain (R. 46). She can walk fifteen minutes, although some days, just five minutes, can sit or stand less than half an hour at a time

9

before the discomfort kicks in, and has difficulty climbing stairs so tries to limit her stair-climbing to twice daily (R. 46-47). She has difficulty bending, stooping, crouching, crawling, kneeling, and reaching overhead (R. 47-48). She sleeps two hours during the day three times a week because of the pain medications (*Id.*). She can dress, shower, cook simple meals, drive short distances, do light grocery shopping, wash a few dishes, occasionally do laundry, and water plants (R. 49-51).

She was a floral designer who specialized in preserved and dried flowers but her allergies now prevent her from doing that (R. 53-54).

Ms. Robben-Cyl has carpal tunnel syndrome, so cannot grip for more than a minute and writing makes her hand numb (R. 48). She can only write a minute or two before her hand gets numb (R. 55-56). A couple times a year two joints in her right hand flare up and cause swelling and a scaly rash on her hand for a week or so (R. 57).

Ms. Robben-Cyl has fibromyalgia, which causes pain she rates at 8/10 that moves from place to place, from the top of her shoulder to her lower back (R. 58). It causes difficulty concentrating and she can only concentrate for half of the day (*Id.*). In addition, the Neurontin, which she had been taking for a little less than a year, makes her "super groggy" (*Id.*).

The vocational expert ("VE"), Edward Pagella, reviewed Ms. Robben-Cyl's past relevant work as an administrative assistant, which was skilled and sedentary; an executive assistant, the same; floral designer, semiskilled and light; and showroom design assistant, semiskilled and light (R. 60). The first hypothetical the ALJ posed was an individual with the claimant's age, education, and work experience who could "lift and carry 20 pounds occasionally/10 pounds frequently; stand and/or walk a total of six hours during an eight-hour workday; sit six hours during an eight-hour workday with a sit/stand option meaning you have to stand one hour, but you're allowed to sit one

to two minutes before resuming the standing position; such individual should never climb ladders, ropes, or scaffolding; can occasionally climb ramps and stairs; occasionally balance, stoop, crouch, kneel, and crawl" (R. 60-61). The VE stated that such an individual would be capable of performing all past relevant work (R. 61).

When the ALJ changed the limitations to "10 pounds occasionally/less than 10 pounds frequently; stand and/or walk a total of two hours during an eight-hour workday; sit at least six hours during an eight-hour workday again with a sit/stand option, however, after sitting for one hour then be allowed to stand for one to two minutes," the VE responded that such an individual could perform work as an administrative or executive assistant, but said there would be no jobs available if that person needed to be off task to nap 20 percent of the workday (R. 61). The VE said there would be no jobs available for a person who was off-task for six hours unscheduled during a 40-hour workweek (R. 62). In response to a hypothetical from Ms. Robben-Cyl's attorney who was relying on Dr. Nelson's assessment of her limitations, the VE also stated that there would be no work for a person who could "lift less than 10 pounds; stand and/or walk less than two hours in an eight-hour workday; sit – but must periodically sit – alternate sitting and standing; is limited pushing and pulling in upper and lower extremities; can never climb; occasionally; and is limited with respect to temperature extremes, dust, vibration, humidity, hazards, and fumes" (R. 63). Limitations of only occasional handling would eliminate all of Ms. Robben-Cyl's past relevant work (R. 64).

## C.

In her written opinion on November 18, 2010, the ALJ found that Ms. Robben-Cyl was not disabled under the Act (R. 16). In evaluating Ms. Robben-Cyl's claim, the ALJ applied the standard five-step sequential inquiry for determining disability, which required her to analyze whether the

11

claimant: (1) is currently employed; (2) has a severe impairment; (3) has an impairment that meets or equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform her past work; and (5) is capable of performing other work in the national economy. *See* 20 C.F.R. § 404.1520(a)(4); *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012). If the ALJ finds at Step 3 that the claimant has a severe impairment that does not equal one of the listed impairments, she must assess and make a finding about the claimant's residual functional capacity before moving on to Step 4. 20 C.F.R. § 404.1520(e). The ALJ then uses the RFC to determine at Steps 4 and 5 whether the claimant can return to her past work or different available work in the national economy. 20 C.F.R. § 404.1520(e)-(g). The claimant bears the burden of proof at Steps 1 through 4, but the burden shifts to the Commissioner at Step 5. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

Here, the ALJ found, at Step 1, that Ms. Robben-Cyl had not engaged in substantial gainful activity since January 1, 2008, the alleged onset date (R. 12). At Step 2, the ALJ found a severe impairment in the degenerative changes of the lumbar spine with a history of surgery in 1993 and herniation in the thoracic spine (*Id.*). She considered the pansinusitis, mild spondylosis of the cervical spine, and mild carpal tunnel syndrome on the right side and deemed them not severe impairments (R. 12-13). At the third step of the analysis, the ALJ determined that the claimant's degenerative disc disease did not meet or medically equal the criteria of 1.04 of the Listing of Impairments (R. 13).

The ALJ then determined that Ms. Robben-Cyl had the RFC to "perform sedentary work as defined by 20 C.F.R. 404.1567(a)[4] with a sit/stand option, allowing the claimant to stand for 1-2 minutes after sitting for one hour" (R. 13). In support of this conclusion, the ALJ highlighted Ms. Robben-Cyl's daily activities, medical records from pain management specialist Dr. Koehn who treated the claimant during 2009, the December 2009 consultative examination with Dr. Weiss, and the consultation with Dr. Cotsamire, the rheumatologist in January 2010 (R. 14-15).

The ALJ was not persuaded by Ms. Robben-Cyl's testimony that she could not work, citing evidence that she does household chores, drives several times a week, takes walks, and tries to exercise (R. 15). She also reads, uses the computer, and does crossword puzzles (*Id.*). In addition, though Ms. Robben-Cyl took a cane to her consultative examination, she did not use it in the examination, nor was it prescribed (*Id.*).

The ALJ elected to afford only some weight to the form completed by Dr. Nelson a month before the administrative hearing, accepting it as far as it supported the sedentary RFC, but rejecting the additional limitations (*Id.*). In addition, the ALJ commented that Dr. Nelson had filled out the statement with the claimant's input, rather than based "on examination or review of objective clinical findings" (*Id.*).

At Step 4, the ALJ concluded that Ms. Robben-Cyl could perform her past relevant work as an administrative assistant and executive assistant, given her RFC (R. 15-16). Consequently, the ALJ found that Ms. Robben-Cyl was not disabled (R.16).

---

[4] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. 404.1567(a).

## III.

We will uphold the ALJ's determination if it is supported by substantial evidence, meaning evidence a reasonable person would accept as adequate to support the decision. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). While the standard of review is deferential, the court cannot "rubberstamp" the Commissioner's decision. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Although the ALJ need not address every piece of evidence, the ALJ cannot limit discussion to only that evidence that supports his ultimate conclusion. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ's decision must allow the court to assess the validity of his findings and afford the claimant a meaningful judicial review. *See Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 698 (7th Cir. 2009). The ALJ must provide "an accurate and logical bridge" between the evidence and her conclusion that a claimant is not disabled. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008).

Ms. Robben-Cyl challenges two aspects of the ALJ's decision. She contends that the ALJ failed to give proper weight to her treating physician's physical RFC assessment and did not properly analyze her credibility (doc. # 17: Pl.'s Mem. at 9).

### A.

Ms. Robben-Cyl argues that the ALJ did not properly consider the physical RFC assessment of her primary treating physician, Dr. Nelson. We agree.

A treating physician's opinion is important because that doctor has been able to observe the claimant over an extended period of time, but it may also be unreliable if the doctor is sympathetic with the patient and thus "too quickly find[s] disability." *Stephens v. Heckler*, 766 F.2d 284, 289 (7th Cir. 1985); *see also Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008); *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). Thus, a treating physician's opinion concerning the nature and

14

severity of a claimant's impairments receives controlling weight only when it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); *see Roddy v. Astrue*, No. 12-1682, 2013 WL 197924, at *5 (7th Cir. Jan. 18, 2013); *Schmidt*, 496 F.3d at 842; *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004).

In *Roddy v. Astrue*, the Seventh Circuit highlighted agency regulations that should guide the analysis of the weight to be given to a doctor's opinion:

> They state that more weight should be given to the opinions of doctors who have (1) examined a claimant, (2) treated a claimant frequently and for an extended period of time, (3) specialized in treating the claimant's condition, (4) performed appropriate diagnostic tests on the claimant, (5) offered opinions that are consistent with objective medical evidence and the record as a whole. 20 C.F.R. § 404. 1527(c)(2)(i), (ii).

2013 WL 197924, at *5. If the treating physician's opinion is inconsistent with the consulting physician's opinion, internally inconsistent, or based solely on the patient's subjective complaints, the ALJ may discount it. *See Henke v. Astrue*, No. 12-2364, 2012 WL 6644201, at *3 (7th Cir. Dec. 21, 2012); *White v. Barnhart*, 415 F.3d 654, 659 (7th Cir. 2005); *Skarbek*, 390 F.3d at 503. But once an ALJ elects to reject a treating physician's opinion, she must "provide a sound explanation" for that decision. *Roddy*, 2013 WL 197924, at *5. And, the ALJ must explain what weight, if any, she gives to the treater's opinion. *Mueller v. Astrue*, No. 11-3013, 2012 WL 3575274, at *5 (7th Cir. Aug. 21, 2012) (citing 20 C.F.R. § 404.1527(d)(2) and *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010)).

Here, in making her RFC determination, the ALJ elected to afford only some weight to the Medical Source Statement prepared by Dr. Nelson on July 6, 2010 (R. 15, 588-90). In the Medical

15

Source Statement, Dr. Nelson assessed Ms. Robben-Cyl's abilities to do work-related activities (R. 588-90). He indicated that she could stand and/or walk less than two hours in an eight-hour workday, needed to alternate sitting and standing to alleviate pain, and was limited in pushing and pulling (R. 588-89). Dr. Nelson also noted that she could never climb, kneel, crouch or crawl, and could only occasionally balance (R. 589). In addition, he found that she was restricted to occasionally reaching, handling, fingering, or feeling, and was limited as to temperature extremes, vibration, humidity/wetness, hazards, fumes, and by allergies to dust (R. 590). He listed the bases for these restrictions as "diffuse osteoarthritis, cervical spinal stenosis, a thoracic herniated disc, the aftermath of a lumbar laminectomy involving multilevel lumbar spondylosis and foraminal stenosis, and chronic myofascial pain syndrome (R. 589).

Although the ALJ credited Dr. Nelson's Medical Source Statement to the extent that it was "partly consistent" with her assessment of Ms. Robben-Cyl's RFC of sedentary with a sit/stand option, she rejected the remainder of the limitations as not supported by the record (R. 15). In particular, the ALJ found the limitations of the upper extremities contrary to Dr. Weiss's findings in her December 8, 2009 consultative examination, in which Dr. Weiss had found Ms. Robben-Cyl's ability to grasp, finger and manipulate, as well as grip strength, all normal (R. 14-15, 530). Conflict with the consultative examination can be a proper basis for limiting the weight of a treating physician's opinion. 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."); *see also Ketelboeter*, 550 F.3d at 625 (ALJ may discount treating physician's opinion if it conflicts with consulting physician's opinion). The ALJ continued on, however, stating that Dr. Nelson "noted that he filled out the Medical Source Statement with the claimant's input, rather than based upon examination or review

16

of objective clinical findings" (R. 15). If this were true, it would provide yet another ground for discounting Dr. Nelson's opinion. *Id.* at 625 (may discount opinion when based solely on patient's subjective complaints). But it is not true. As Ms. Robben-Cyl correctly points out: "[n]othing in the Medical Source Statement supports this conclusion" (Pl.'s Mem. at 11), and the Commissioner concedes that the ALJ's statement is at least "partially inaccurate" (Resp. Br. at 9).

Though the ALJ was not required to give Dr. Nelson's opinion controlling weight, we find that her explanation for doing so was perfunctory and factually flawed. The record shows that Dr. Nelson has treated Ms. Robben-Cyl since at least January 2007 (R. 388-91), has examined her multiple times,[5] referred her to numerous specialists, sent her for multiple rounds and varying types of physical therapy, and ordered multiple diagnostic tests. We are unpersuaded that substantial evidence supports the ALJ's decision to discredit Dr. Nelson's opinion merely because it conflicts with that of a consulting physician who spent only thirty minutes with Ms. Robben-Cyl (R. 527-30). The ALJ failed to provide a sufficient explanation for resolving that conflict in favor of the consulting physician. Certainly, the incorrect suggestion that Dr. Nelson allowed Ms. Robben-Cyl to dictate his report does not suffice. On remand, there may be sufficient reason to discount Dr. Nelson's opinion, but the ALJ will need to offer more than the factually inaccurate conclusion that Dr. Nelson relied solely on Ms. Robben-Cyl's input  and conflict with a single report of a non-treating consultant, in a medical record filled with treating physicians' notes and reports. *See Roddy*, 2013 WL 197924, at * 5 (improper rejection of treating physician's opinion where he examined

---

[5] Ms. Robben-Cyl asserts that Dr. Nelson saw her 33 times between April 2007 and July 2010 (Pl.'s Reply at 4 citing R. 312-91, 449-74, 561-90). Though we did not verify the accuracy of her count, we agree that the record reflects numerous visits.

claimant frequently over six years, used diagnostic aids, such as MRIs, and consulting physician examined claimant only once).[6]

### B.

Ms. Robben-Cyl also argues that remand is necessary because the ALJ failed to properly analyze her credibility regarding her pain and symptoms, and most notably, the effects of her medication (Pl.'s Mem. at 12-15). We agree.

When a claimant testifies about the symptoms her impairment causes, the ALJ must evaluate the credibility of the claimant's testimony. 20 C.F.R. § 404.1529(c)(3). In making this determination, "the ALJ must consider the claimant's level of pain, medication, treatment, daily activities, and limitations, 20 C.F.R. § 404.1529(c), and must justify the credibility finding with specific reasons supported by the record." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009) (quoting *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009)); *see also* SSR 96-7p (listing the factors a decisionmaker must consider when evaluating the claimant's credibility with regard to pain and other nonexertional limitations).

In the RFC analysis, the ALJ highlighted one particular pain specialist's treatment notes, the observations of the consultative medical examiner, and the opinion of a rheumatologist (R. 14-15). The ALJ also considered a Medical Source Statement that Ms. Robben-Cyl's primary care physician,

---

[6] Ms. Robben-Cyl takes further issue with the RFC determination, contending that once the ALJ rejected Dr. Nelson's opinion and the RFC finding of the non-examining state agency doctor, the ALJ had no medical opinion to support the RFC for a limited range of sedentary work (Pl.'s Mem. at 12). We note that the ALJ determined Ms. Robben-Cyl could perform sedentary work, without mentioning the report of the nonexamining state agency doctor, which found Ms. Robben-Cyl had the RFC to perform light work (R. 427-34). Because we remand for further proceedings, we do not address this argument in detail. But we agree that the ALJ did not articulate the connections between the evidence she highlighted and the functional limitations she accepted. An ALJ must explain her reasoning, building an "accurate and logical bridge" that connects the evidence to her decision. *See, e.g., Kastner*, 697 F.3d at 646 (quoting *Craft*, 539 F.3d at 673).

Dr. Nelson, provided (R. 15). In addition, the ALJ listed an array of Ms. Robben-Cyl's daily activities to support the conclusion that Ms. Robben-Cyl could perform sedentary work, with limitations (R. 14-16).

The sole reference to Ms. Robben-Cyl's credibility, however, is "[t]he claimant is not persuasive as to being unable to do any work" (R. 15). In support of this statement, the ALJ offers:

> She lives in a house with her husband, who works. The claimant tends to household chores . . . . She drives 3-4 times per week and waters plants. The claimant goes out to eat occasionally . . . . She reads, uses the computer, and does crossword puzzles. . .She takes walks, and claimant said she tries to exercise.

(R. 15).

The ALJ's analysis did not adequately address Ms. Robben-Cyl's claims of chronic pain. The ALJ relies on a list of Ms. Robben-Cyl's daily activities to discredit her disability claim. But in cases where the claimant alleged chronic pain, the Seventh Circuit has found that household chores and taking walks are not inconsistent with severe pain. *See, e.g., Hughes v. Astrue*, No. 12-1873, 2013 WL 163477, at *3 (7th Cir. Jan. 16, 2013); *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012); *Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004). In *Carradine*, the Seventh Circuit noted that, "[a] patient may do these activities *despite* pain for therapeutic reasons, but that does not mean she could concentrate on work despite the pain or could engage in similar activity for a longer period given the pain involved." *Carradine*, 360 F.3d at 756 (emphasis in original). The court went on to find that the claimant's daily activities amounted to only "a scintilla" of evidence that she lacked credibility. *Id.* The same reasoning applies here. That Ms. Robben-Cyl can accomplish some basic household chores and take walks does not suffice to undermine her claims

of disabling pain. *See also Morris v. Astrue*, No. 11 C 0251, 2012 WL 6680287, at *9 (N.D. Ill. Dec. 20, 2012) (ability to walk 20 minutes did not discredit claim of pain severity).

The ALJ also relied on two treatment notes from Dr. Koehn to discredit Ms. Robben-Cyl's claim of disabling pain. It is worth noting, however, that Dr. Koehn was meeting with Ms. Robben-Cyl to treat her for chronic pain, and in the April 3, 2009, treatment note on which the ALJ relies, he wrote that Ms. Robben-Cyl "certainly has problems that would be pain producing. On the other hand, she also has problems which should be entirely controllable" (R. 301). Reading this note in context could lead to the conclusion that controlling Ms. Robben-Cyl's pain was at that point aspirational. Moreover, focusing only on two treatment notes out of years of medical records constitutes impermissible "cherry-picking." *See, e.g., Bauer v. Astrue*, 730 F. Supp. 2d 884, 893 (N.D. Ill. 2010); *see also Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) (case based on mental illness). The ALJ failed to address sufficiently the evidence in the record supporting Ms. Robben-Cyl's allegations of chronic pain, including the fact that Dr. Nelson sent her for treatment with multiple specialists, for multiple rounds and varying kinds of physical therapy, and has prescribed various types of pain medications to deal with her continuing complaints of pain. *See Carradine*, 360 F.3d at 755 (improbable that claimant pursued all of the treatment and therapy "merely in order to strengthen the credibility of her complaints of pain"); *see also Heeman v. Astrue*, 414 Fed. App'x 864, 868 (7th Cir. 2011).

Significantly, in determining Ms. Robben-Cyl's RFC, the ALJ failed to address at all Ms. Robben-Cyl's testimony that her medications cause her to be groggy and drowsy, and cause her to nap during the day (R. 46, 48). That omission was a serious one that by itself requires a remand. Ms. Robben-Cyl testified that the medications she takes make her so groggy that she can only

concentrate for half the day (R. 58). The VE testified that no jobs would be available for a person who needed to nap 20 percent of the work day or would be off-task for six hours unscheduled during a 40-hour work week (R. 61-62).

The Commissioner attempts to shore up the ALJ's missing analysis of Ms. Robben-Cyl's medication side effects by highlighting a pain specialist's treatment note from May 2009, in which he stated that Ms. Robben-Cyl rarely took the medications, and Ms. Robben-Cyl's testimony that she did not take any on the day of her hearing (Resp. Br. 6 citing R. 46, 307). The record may provide abundant reasons for disbelieving Ms. Robben-Cyl's testimony about the effects of her medications. But without analysis and explanation from the ALJ, we cannot know what the ALJ's reasoning is. As the Seventh Circuit has repeatedly held, "'what matters are the reasons articulated *by the ALJ,*' not the rationale supplied by the Commissioner on appeal." *Mueller*, 2012 WL 3575274, at *4 (quoting *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011)) (emphasis in the original); *see also Roddy*, 2013 WL 197924, at *6; *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010). Our comments should not be taken as a signal that on remand, Ms. Robben-Cyl inevitably must be found disabled. That is a decision we leave for the ALJ, who has the responsibility for deciding that question – and for building "an accurate and logical bridge" between the evidence and her conclusions. *Craft*, 539 F.3d at 673. It is neither the responsibility nor the right of the government to attempt to build that bridge in the first instance on an appeal from the ALJ's decision.

In closing, we draw to the attention of the Commissioner the Seventh Circuit's recent decision in *Hughes v. Astrue*, No. 12-1873, 2013 WL 163477 (7th Cir. Jan. 16, 2013). In that case, the appeals court stated that by attempting to defend the ALJ's decision on a rationale never expressed by the ALJ, the government's brief "[c]haracteristically, and sanctionably, . . . violates the

21

*Chenery* doctrine. *Id.* at *3 (citing *SEC v. Chenery Corp.*, 318 U.S. 80 (1943) and *Kastner*, 697 F.3d at 648). The Seventh Circuit did not in fact impose sanctions in that case. But, the Seventh Circuit's statement strikes us as not just a reminder, but as a warning, that the government must abandon any effort to defend denials of disability by positing an opinion that the ALJ might have written – but, in fact, did not write. Perhaps in those cases where the government is tempted to resort to an analysis that the ALJ never employed in order to defend a decision, the government instead should consider agreeing to a voluntary remand to give the ALJ an opportunity to adopt (or reject) that analysis.[7]

## CONCLUSION

For all foregoing reasons, plaintiff's motion for motion for reversal and remand is granted. The case is remanded for further proceedings consistent with this ruling. The case is terminated.

**ENTER:**

SIDNEY I. SCHENKIER
**United States Magistrate Judge**

**Dated: February 6, 2013**

---

[7] We note that in this case, the Commissioner had an opportunity before this case was even filed to correct the ALJ's error in failing to address Ms. Robben-Cyl's testimony about the effects of medication. In her request to the Appeals Council for review of the ALJ's decision, Ms. Robben-Cyl cited as error the ALJ's failure to address that evidence (R. 154-55). The Appeals Council denied the request (R. 1-5).